# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| SUSAN E. NEWGENT, | CASE NO. 09cv1525 WQH (WMC) |
|---|---|
| Plaintiff, | |
| vs. | **ORDER** |
| WELLS FARGO BANK, N.A., | |
| Defendant. | |

HAYES, Judge:

The matter before the Court is the Motion to Dismiss Plaintiff's Second Amended Complaint filed by Defendant Wells Fargo Bank, N.A. (Doc. # 18).

## BACKGROUND

On March 11, 2009, Plaintiff Susan E. Newgent filed a complaint against Defendants in California Superior Court for the County of Imperial. (Doc. # 1). On July 14, 2009, Plaintiff removed the action to this court. *Id.* On July 20, 2009, Wells Fargo Bank N.A. ("Wells Fargo") filed a Motion to Dismiss. (Doc. # 4). On September 4, 2009, Plaintiff filed her First Amended Complaint ("FAC"). (Doc. # 6). On September 14, 2009, Wells Fargo filed a Motion to Dismiss Plaintiff's FAC. (Doc. # 9). Wells Fargo did not withdraw its original Motion to Dismiss. (Doc. # 4). On October 13, 2009, the Court denied the original

Motion to Dismiss (Doc. # 4) as moot. (Doc. # 13). On October 19, 2009, the Court heard oral argument on the Motion to Dismiss Plaintiff's FAC. On October 20, 2009, the Court granted Wells Fargo's Motion to Dismiss Plaintiff's FAC with leave to amend. (Doc. # 15). On November 3, 2009, Plaintiff filed a Second Amended Complaint ("SAC"). (Doc. # 16). On November 12, 2009, Wells Fargo filed its Motion to Dismiss Plaintiff's SAC. (Doc. # 18).

**FACTUAL ALLEGATIONS OF THE SECOND AMENDED COMPLAINT**

Plaintiff purchased a home in Imperial County with a mortgage from Wells Fargo on December 26, 2003. (Doc. # 16 at 2). Plaintiff divorced her husband in January of 2005, and acquired title to the property in the divorce through a quitclaim deed. *Id.* Plaintiff's ex-husband did not make child support payments, and as a result, Plaintiff was unable to pay her mortgage. *Id.* at 3. Plaintiff stopped paying her mortgage in March of 2008. *Id.* Plaintiff attempted to modify her loan during the summer of 2008, but Wells Fargo denied the loan modification because she did not have a steady job. *Id.* In the fall of 2008, Plaintiff remarried. *Id.* Plaintiff's new husband was employed, so Plaintiff attempted to obtain a loan modification for the second time. *Id.* Plaintiff received a notice on October 13, 2008 that her home would be sold at a Trustee's Sale on November 6, 2008. *Id.* Plaintiff contacted Wells Fargo and inquired about the status of her loan modification. *Id.* Plaintiff communicated with a Wells Fargo employee named "Suzie" by phone and was told that the Trustee's Sale would be delayed if Plaintiff paid $2,500.77 and that Wells Fargo would process her loan modification documents. *Id.* Plaintiff sent a check for $2,500.77 to Wells Fargo, which cashed the check prior to November 6, 2008. *Id.* However, Wells Fargo nonetheless sold Plaintiff's home on November 6, 2008. *Id.* Wells Fargo filed an unlawful detainer claim against Plaintiff on April 8, 2009. *Id.* Plaintiff was "forced out of her home" after a judgment was entered against Plaintiff for unlawful possession on June 22, 2009. *Id.* at 3-4.

Plaintiff's SAC alleges seven claims for relief: (1) Constructive Fraud; (2) Actual Fraud; (3) Conversion; (4) Breach of the Covenant of Good Faith and Fair Dealing; (5) Declaratory Relief; (6) Quiet Title; and (7) Equitable and Promissory Estoppel. *Id.* at 1, 4-11. Wells Fargo has moved to dismiss all of Plaintiff's claims. *See* Doc. # 18. Plaintiff "agree[d]

1  to drop" her fourth claim for Breach of the Covenant of Good Faith and Fair Dealing, her fifth
2  claim for Declaratory Relief, and her sixth claim to Quiet Title. (Doc. # 19 at 11-12).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a) provides: "A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To sufficiently state a claim to relief and survive a Rule 12(b)(6) motion, a complaint "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1950 (2009). However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see, e.g., Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 683 (9th Cir. 2009) ("Plaintiffs' general statement that Wal-Mart exercised control over their day-to-day employment is a conclusion, not a factual allegation stated with any specificity. We need not accept Plaintiffs' unwarranted conclusion in reviewing a motion to dismiss."). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

**ANALYSIS**

**I.     Constructive Fraud**

In support of Plaintiff's claim for constructive fraud pursuant to California Civil Code § 1573, Plaintiff alleges Wells Fargo owed a duty not to mislead her because she was a customer of Wells Fargo and had a contractual relationship with Wells Fargo. (Doc. # 16 at 4). Plaintiff alleges Suzie was a representative of Wells Fargo acting with actual or ostensible authority when she told Plaintiff that sale of Plaintiff's home would be delayed if exchange for a $2,500.77 payment. *Id.* Plaintiff alleges she payed the $2,500.77 "in consideration for the delay of the sale and for no other reason," and that she would have filed a lawsuit to delay the sale if she had realized her home would be sold despite her payment. *Id.* Plaintiff alleges she suffered $500,000 in economic damages and $500,000 in "general damages, including severe emotional distress . . . ." *Id.* at 4-5.

Wells Fargo contends that lenders do not owe either a fiduciary duty or a duty of care to a borrower. (Doc. # 18-1 at 11). Wells Fargo contends that, as a matter of law, Plaintiff's claim for constructive fraud fails because it is based on a duty of care that does not exist under California law. *Id.*

Plaintiff concedes that no fiduciary duty existed, but contends that the duty of care can arise through undue influence pursuant to California Civil Code § 1575. (Doc. # 19 at 3). Plaintiff contends that she had "reposed confidence" in Wells Fargo based on Suzie's representations and that Wells Fargo took advantage of "the distress . . . involved with losing her house where she resided with her 8 children and her difficult financial circumstances (stressful situation)." *Id.*

Pursuant to California Civil Code § 1573, constructive fraud is a "breach of duty . . . without an actually fraudulent intent" where one person "gains an advantage" over another by "misleading another to his prejudice." Pursuant to California Civil Code § 1575, undue influence is defined as "the use, by one in whom a confidence is reposed by another, or who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage over him;" or "in taking unfair advantage

- 4 -                                                     09cv1525 WQH (WMC)

of another's weakness of mind;" or "in taking a grossly oppressive and unfair advantage of another's necessity or distress."

Plaintiff raised undue influence for the first time in her opposition to Wells Fargo's Motion to Dismiss SAC and did not allege facts in the SAC which would support an undue influence claim. In her SAC, Plaintiff alleged that the duty of care element of constructive fraud arose through her contractual relationship and consumer-lender relationship with Wells Fargo, not through undue influence. *See* Doc. # 16 at 4. A contractual or consumer-lender relationship, without more, cannot be the basis of a duty of care under California law. *See, e.g., Nymark v. Heart Federal Savings & Loan Ass'n*, 231 Cal. App. 3d 1089, 1096 (1991) ("[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's scope of involvement does not exceed its conventional role as a lender of money."); *Resolution Trust Corp. v. BVS Dev.*, 42 F.3d 1206, 1214 (9th Cir. 1994) ("Under California law, a lender does not owe a borrower or third party any duties beyond those expressed in the loan agreement, excepting those imposed due to special circumstance or a finding that a joint venture exists.") (*citing id.*). Plaintiff's first claim for constructive fraud is dismissed.

## II. Actual Fraud

In support of Plaintiff's claim for actual fraud, Plaintiff alleges "Wells Fargo engages in a business practice of misleading its mortgage customers facing a trustee's sale by promising to delay sales in exchange for money." (Doc. # 16 at 5). Plaintiff alleges these payments are not credited as mortgage payments, but are instead "held separately to avoid restarting the default clock which would require new notices" before Wells Fargo could proceed with a trustee's sale. *Id.* Plaintiff alleges "Wells Fargo trains its employees and agents" to engage in this practice and that employees who entice consumers to make additional mortgage payments when a trustee's sale is imminent "are financially rewarded either on a merit basis or with bonuses or with a commission percentage for the collection of such funds." *Id.*

Wells Fargo contends that these allegations are not sufficiently specific to meet the

higher pleading standard of Federal Rule of Civil Procedure 9(b). (Doc. # 18-1 at 12-13). Wells Fargo contends that Plaintiff has failed to plead dates, times, places, and persons associated with the alleged fraud and has failed to allege that Wells Fargo had an intent to defraud Plaintiff. *Id.* Wells Fargo contends that Plaintiff fails to sufficiently allege justifiable reliance. *Id.* at 13. Wells Fargo contends that Plaintiff cannot causally connect this $2,500.77 payment to the $500,000 in economic damages and the $500,000 in general damages she alleges. *Id.* at 13-14. Wells Fargo contends that Plaintiff cannot recover damages for emotional distress based on losing her home under California law. *Id.* at 16. Wells Fargo contends that the statute of frauds bars Plaintiff's claim because a forbearance agreement is an unenforceable oral contract relating to real property. *Id.* at 16-17.

Plaintiff contends that the statute of frauds is not a defense to her claim because it only applies to contracts that cannot be performed within one year pursuant to California Civil Code § 1624. (Doc. # 19 at 3-4). Plaintiff contends that the oral contract could be performed within one year because Plaintiff was simply "buying some additional time in reliance on the representation that she might qualify for loan modification due to her changed circumstances." *Id.* at 4. Plaintiff contends that her allegations are sufficiently specific to meet the pleading requirements. *Id.* Plaintiff contends that it was reasonable to assume that "Suzie" acted as an agent for Wells Fargo and reasonable to rely on "Suzie's" statements because Wells Fargo hired her, employed her, and allowed her to interact with customers as a representative of Wells Fargo. *Id.* at 5. Plaintiff contends that she was no longer obligated to make mortgage payments and was induced to make the payment she made by a promise to continue negotiating a loan modification. *Id.* at 10. Plaintiff contends that she lost the opportunity to block the sale through legal action because she relied on statements by Wells Fargo's agent. *Id.* at 9-10. Plaintiff contends that she has, therefore, plead causation. *Id.* at 10.

Pursuant to California Civil Code § 1572,

> Actual fraud, within the meaning of this chapter, consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract:

> 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;
> 2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true;
> 3. The suppression of that which is true, by one having knowledge or belief of the fact;
> 4. A promise made without any intention of performing it; or,
> 5. Any other act fitted to deceive.

Actual fraud which induces a party to enter into a contract renders the contract voidable. Cal. Civ. Code § 1572.

Plaintiff's claim for fraud attempts to link the alleged deception which she claims induced her to pay $2,500.77 to temporarily delay a trustee's sale to a million dollars in damages. Plaintiff has not plead facts which would allow her to establish a causal connection between the alleged fraud and the alleged damages. Plaintiff asserts that but for Wells Fargo's agent's deception, Plaintiff would have taken legal action "to forestall the sale of her home," however, she does not allege facts that support a cognizable theory upon which she would have succeeded in preventing the trustee's sale. Even if Plaintiff had succeeded in delaying the sale of her home, she has not asserted that Wells Fargo was under any obligation to agree to a modification of her loan. Unless Wells Fargo had agreed to a modification of the loan, Plaintiff has conceded she would have lost her home regardless of whether Wells Fargo's employee deceived her into making the payment to delay the trustee's sale. *See* Doc. # 19 at 4. ("[Plaintiff] was *buying some additional time* in reliance on the representation that she *might* qualify for a loan modification due to her changed circumstances. . . . The agreement [Plaintiff] made with the bank [was] to immediately pay $2,500.77 *so a trustee's sale would not go forward two weeks later*.") (emphasis added).

Furthermore, any agreement to delay the trustee's sale would have been subject to the statute of frauds. Plaintiff contends that a promise not to go forward with a trustee's sale is enforceable despite the lack of a writing because it would have been performed within one year. However, California courts have held that forbearance agreements altering a mortgage are covered by the statute of frauds. *See, e.g., Sechrest v. Security*

*Natn'l Loan Trust*, 167 Cal. App. 4th 544, 553 (2008) ("An agreement to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds.").

Plaintiff's second claim for actual fraud is dismissed.

### III. Conversion

In support for Plaintiff's third claim for conversion, Plaintiff alleges Wells Fargo accepted a payment of $2,500.77 which she made based on a promise to defer the trustee's sale of her home. (Doc. # 16 at 7). Plaintiff alleges Wells Fargo did not credit her payment towards her mortgage. *Id.* Plaintiff alleges Wells Fargo "wrongfully converted those funds by misrepresentation that such funds would be used to delay the sale of Plaintiff's home." *Id.* Plaintiff alleges she demanded repayment after Wells Fargo sold her home despite the promise to delay the sale. *Id.* Plaintiff alleges Wells Fargo is required to return the payment to her. *Id.*

Wells Fargo contends that Plaintiff's conversion claim fails as a matter of law because "[b]anks do not steal money when they accept delinquent mortgage payments from their borrowers." (Doc. # 18-1 at 17). Wells Fargo contends that Plaintiff was already obligated to make monthly mortgage payments and that paying Wells Fargo a portion of the money Plaintiff already owed cannot constitute consideration for a forbearance agreement. *Id.*

Plaintiff contends that "banks do steal money. Anyone reading the newspapers knows that. That is why Plaintiff is suing. They stole her check for $2,500.77." (Doc. # 19 at 10). Plaintiff contends that California is a no-recourse state and that Plaintiff was under no obligation to make any payment because the "lender cannot obtain a deficiency judgment after a nonjudicial foreclosure sale" pursuant to California Code of Civil Procedure § 580d. *Id.* at 10-11.

Pursuant to California Code of Civil Procedure § 580d,

> No judgment shall be rendered for any deficiency upon a note secured by a deed of trust or mortgage upon real property or an estate for years therein hereafter executed in any case in which the real property or estate for years therein *has been sold* by the mortgagee or trustee under power of sale contained in the mortgage or deed of trust.

(emphasis added).  Plaintiff's payment was made before the home was sold.  When Plaintiff made the payment, she was not yet protected by § 580d.  Plaintiff conceded she still owed Wells Fargo money when she made the payment by alleging she was seeking a modification of her mortgage, which she admits she had stopped paying eight months earlier. *See* Doc. # 16 at 3.  Accepting payment a Plaintiff owes on a delinquent mortgage cannot be the basis of a conversion claim against a lender.  Plaintiff's third claim for conversion is dismissed.

## IV.   Equitable and Promissory Estoppel

In support of Plaintiff's seventh claim[1] for equitable and promissory estoppel, Plaintiff alleges an agent of Wells Fargo made a misrepresentation of material fact which Plaintiff reasonably relied on to her detriment.  (Doc. # 16 at 10-11).  Plaintiff alleges she would not have sent Wells Fargo a check for $2,500.77 if Suzie had not represented to Plaintiff that the payment would delay the trustee's sale.  *Id.*  Plaintiff alleges she would have taken legal action to stop the sale but for Wells Fargo's agent's representation the sale would be delayed in exchange for Plaintiff's payment.  *Id.*

Wells Fargo contends that Plaintiff fails to allege the necessary elements of a promissory or equitable estoppel claim.  (Doc. # 18-1 at 22).  Wells Fargo contends that Plaintiff's allegations do not establish detrimental reliance because Plaintiff was already obligated to pay her mortgage.  *Id.*  Wells Fargo contends that even if this payment is not considered a mortgage payment, it cannot be the basis of a detrimental reliance claim because detrimental reliance calls for "some other act than called for in his or her own promise.  If the only claimed reliance is performance of the act bargained for, the doctrine is inapplicable." *Id.* at 23 (citation omitted).  Wells Fargo contends that Plaintiff has failed to allege any "credible legal action" Plaintiff could have taken to prevent the trustee's sale because she failed to pay her mortgage for eight months prior to the sale.  *Id.*  Wells Fargo contends that even if Plaintiff did in fact rely on representations by Suzie that Wells Fargo

---

[1] Plaintiff agreed to drop her fourth claim for breach of the covenant of good faith and fair dealing, her fifth claim for declaratory relief, and her sixth claim for quiet title. (Doc. # 19 at 11-12).

would not go forward with the sale, such reliance was not reasonable. *Id.*

Plaintiff contends that her reliance on the promise was reasonable and foreseeable because "the promise was made by an employee of Wells Fargo, a financial institution that advertises itself as being trustworthy." (Doc. # 19 at 12). Plaintiff contends that she was harmed by her reliance because "instead of working with her on a loan modification, Wells Fargo went forward with the trustee's sale and ultimately sold the home, forcing her to uproot her family and move out." *Id.*

"[D]etrimental reliance is an essential feature of promissory estoppel." *Healy v. Brewster*, 59 Cal. 2d 455, 463 (1963). Plaintiff makes allegations about two separate instances of detrimental reliance. First, Plaintiff alleges that she made a payment that she would not have made if she did not believe Wells Fargo was renegotiating her mortgage. Because Plaintiff was already legally obligated to make payments on her mortgage, the Court concludes that the payment in reliance on the promise that Wells Fargo would delay the trustee's sale was not detrimental. Second, Plaintiff alleges she failed to take legal action to delay the trustee's sale because she believed Wells Fargo had already agreed to delay the sale in exchange for her $2,500.77 payment. Plaintiff does not, however, allege facts that could establish that Plaintiff would have been successful in delaying the foreclosure sale, renegotiating her loan, and retaining possession of the home. Plaintiff conceded in her opposition that she believed the $2,500.77 payment bought her more time to negotiate and does not allege that Wells Fargo was under any obligation to restructure her loan. (Doc. # 19 at 3-4). Plaintiff has failed, therefore, to allege sufficient facts to establish a connection between her reliance on the alleged promise and losing her home to sustain her claim for estoppel. Plaintiff's seventh claim for promissory and equitable estoppel is dismissed.

## CONCLUSION

IT IS HEREBY ORDERED THAT the Motion to Dismiss Plaintiff's Second Amended Complaint filed by Defendant Wells Fargo Bank, N.A (Doc. # 18) is **GRANTED**. Plaintiff may file a motion for leave to amend the complaint within thirty

days of the date of this order.  Plaintiff must obtain a hearing date pursuant to the Local Rules of Civil Procedure before filing any motion for leave to amend.  In the event no motion is filed, the Court will dismiss the action without prejudice.

DATED:  March 2, 2010

**WILLIAM Q. HAYES**
United States District Judge